# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WILLIAM KOLLIN, individually,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF TEHACHAPI, a governmental entity; JARED MCCOMBS, individually; BRUCE MEDINA, individually; AMELIA THOMPSON, individually; CHIEF OF POLICE KENT KROEGER, individually and in his official capacity; and DOES 1 through 10;<br><br>Defendants. | 1:18-cv-00617-LJO-JLT<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF No. 27) |

## I. INTRODUCTION

This case arises from an incident in the parking lot of a Holiday Inn Express in Tehachapi, California, when Plaintiff Richard William Kollin ("Plaintiff") was shot twice in the back following an encounter with police. In his First Amended Complaint ("FAC"),[1] Plaintiff brings claims against the City of Tehachapi, Jared McCombs, Bruce Medina, Amelia Thompson, Chief of Police Kent Kroeger, and Does 1-10, alleging violations of 42 U.S.C. § 1983 and state-law claims for battery, negligence, violations of the Bane Act, and false arrest/false imprisonment.

Defendants moved to dismiss. ECF No. 27 ("Motion"). Plaintiff opposed. ECF No. 29

---

[1] The Complaint, ECF No. 1, and initial FAC, ECF No. 7, were filed in the U.S. District Court for the Central District of California before the parties stipulated to transferring the case to the Eastern District of California. Plaintiff filed the operative FAC on May 11, 2018. ECF No. 24.

1

("Opp."). Defendants did not file a reply. This matter is suitable for disposition without oral argument. *See* Local Rule 230(g). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

## II. FACTUAL BACKGROUND[2]

On or about May 24, 2017, at approximately 10:20 p.m., Plaintiff parked his vehicle in a Holiday Inn Express parking lot in Tehachapi, California. FAC ¶ 14. He exited his vehicle and proceeded on foot to the hotel lobby to inquire about room rates. *Id.* ¶ 15. As he was walking toward the hotel, two Tehachapi police cars, driven by Medina and McCombs, pulled into the parking lot.[3] *Id.* The two officers immediately reached for their handguns, prompting Plaintiff to fear for his life and flee toward a field adjacent to the hotel parking lot. *Id.* ¶ 16. As he was running through the field, he was shot twice in the back. *Id.* ¶ 17. He was unarmed. *Id.* ¶ 18. He blacked out after being shot and next remembers being airlifted by a helicopter to a hospital. *Id.* ¶ 17. He believes that after being shot, officers also used a Taser on him and that Thompson, who apparently arrived after the initial encounter, was involved with this use of force. *Id.* ¶ 17. The bullets from the two gunshots lodged near Plaintiff's spinal cord, paralyzing his left leg for almost eight months. *Id.* ¶ 19. He had two surgeries to remove the bullets, one of which remains lodged in his back. *Id.*

## III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the

---

[2] The following facts are drawn from the FAC and are accepted as true for purposes of this motion to dismiss. *See OSU Student All. v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012).

[3] The FAC paints a bit of a muddled scene and is less than clear on the matter of which police officer was involved when. It states that Medina and Thompson drove separate vehicles and pulled into the parking lot near Plaintiff's car but in the following sentence states that Medina and McCombs exited their vehicles and immediately reached for their handguns. FAC ¶¶ 16-17. Thompson apparently arrived later, and the reference to Thompson in ¶ 16 appears to be an error; that paragraph should reference McCombs.

absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. ANALYSIS

### A. Federal Claims

#### 1. First Claim For Relief: Unreasonable Search And Seizure – Excessive Force (42 U.S.C. § 1983)

The first claim for relief in the FAC is for a violation of 42 U.S.C. § 1983 ("§ 1983") for excessive force in violation of the Fourth Amendment, brought against Combs, Medina, and Thompson. Defendants move to dismiss as to Thompson on the basis that the FAC contains inadequate facts to put her on notice of the violations she is alleged to have committed and move to dismiss the claim generally, arguing that the generic claims lack facts about what unreasonable seizures preceded the shooting, how events escalated, and how the theory of liability is based on "excessive escalation" and integral participation by all defendants. Mot. at 4-5.

To state a claim under § 1983, plaintiff must allege that: (1) the defendant was acting under color of state law at the time the complained of act was committed; and (2) the defendant's conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998). Police force is excessive and in violation of the Fourth Amendment if it is objectively unreasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The assessment of reasonableness uses the non-exhaustive *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 393. Because these factors are not exclusive, courts examine the totality of the circumstances to

determine whether the use of force was reasonable in light of "whatever specific factors may be appropriate in a particular case." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)). The most important "*Graham* factor is whether the suspect posed an 'immediate threat to the safety of the officers or others.'" *Id*. (quoting *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir.2005) (en banc)).

Defendants argue that the facts in the FAC are insufficient to state a claim against Thompson, because the extent of the facts alleged are that "[u]pon information and belief, [Thompson] was also involved in the use of force" against Plaintiff. FAC ¶ 17. Plaintiff responds that the claim against Thompson concerns only events following the shooting. He argues that because the shooting was unwarranted and unconstitutional, any force that Thompson used would also have been unconstitutional. The FAC appears to allege that Thompson used her Taser following the shooting. *See* FAC ¶ 16 (alleging that after Medina and McCombs exited their vehicles and immediately reached for their handguns, scaring Plaintiff into running away); *id*. ¶ 17 (alleging that after being shot, Plaintiff "was also struck by taser darts" and that Thompson "was also involved in the use of force" against Plaintiff).

The FAC is less than clear on what exactly it alleges happened, but the key allegations appear to be that Medina and McCombs separately pulled into the parking lot, emerged from their vehicles while brandishing their weapons, and then shot Plaintiff, who was unarmed, in the back while he attempted to flee. It appears also to allege that Thompson arrived later and used her Taser on Plaintiff after he was shot. These facts paint a bare picture but one that is sufficient to make out a claim for excessive force against all three officers. If, as the facts viewed in the light most favorable to Plaintiff suggest, Plaintiff was incapacitated by gunshots, there would have been no reasonable basis for Thompson to use a Taser on Plaintiff.

Plaintiff is free to clarify and add additional details in any amended complaint, but the allegations against the officer defendants notify them of the claims against them and are enough to survive a motion to dismiss. Accordingly, the motion to dismiss the first claim for relief is **DENIED**.

5

## 2. **Second Claim For Relief: Unreasonable Search And Seizure – Detention And Arrest (42 U.S.C. § 1983)**

The second claim for relief in the FAC is for a violation of § 1983 for wrongful detention and arrest in violation of the Fourth Amendment, brought against Combs, Medina, Thompson, and Doe Defendants. This claim hinges on whether the officers had probable cause to make the arrest. "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). The standard "is incapable of precise definition or quantification because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). It "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Rodis v. City, County of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). "Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (citing *Lopez*, 482 F.3d at 1072).

The fact section of the FAC leaves unclear what exactly this claim alleges. Whether it was the shooting itself that worked a seizure or whether it was the arrest—and what exactly was wrong with any such arrest—is not elucidated in the factual narrative. Paragraph 29 does make the theory of liability a bit clearer, stating that these defendants "detained Plaintiff without reasonable articulable suspicion, arrested him without a warrant or probable cause, and seized him in an unreasonable manner." FAC ¶ 29. It goes on to state that the three officer defendants are liable either because they were integral participants or because they "failed to intervene to prevent these violations." *Id*. ¶ 30. Plaintiff states in his opposition to the motion to dismiss that this paragraph makes clear that the claim rests on both "the conduct preceding the shooting" and the detention and arrest, including the shooting and the use of the

Taser. Opp. at 5.

To the extent this claim is premised upon the events leading up to the shooting and/or the shooting itself (including any potential use of a Taser), it is duplicative of the first claim, which alleges an unlawful seizure based upon excessive force. Duplicative claims are subject to being stricken. *See* Fed. R. Civ. P. 12(f) (permitting court to strike "any redundant, immaterial, impertinent, or scandalous matter").

Construing the claim as one premised on the effectuation of a detention or arrest without the requisite cause, the Complaint fails to articulate any facts regarding detention or arrest, apart from the "seizure" that took place when Defendant was shot and/or Tased.

Accordingly, the motion to dismiss the second claim for relief is **GRANTED WITH LEAVE TO AMEND**.

**3. Third Claim For Relief: Municipal Liability For Unconstitutional Custom, Policy, Or Practice (42 U.S.C. § 1983)**

The fourth claim for relief is for *Monell* liability against the city and Chief Kroeger for an unconstitutional custom, policy, or practice. Defendants argue that the claim is conclusory, unclear, and internally contradictory and does not survive under Rule 8.

A municipality cannot be held liable under § 1983 for the actions of its employees under the theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. *Id.* at 694. A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954

F.2d 1470, 1474 (9th Cir. 1992)). More generally, a plaintiff must show the following: (1) the plaintiff was deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks and citations omitted); *Mabe v. San Bernardino County*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Municipal liability under *Monell* may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). The Ninth Circuit has recognized that "a custom or practice can be 'inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233-35 (9th Cir. 2011) (citations omitted); *see also Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) (noting that "one or two incidents are insufficient to establish a custom or policy"); *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents of nonintervention were insufficient to support a policy). *Trevino v. Gates*, 99 F.3d 911, 918-19 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

Allegations concerning *Monell* liability based on the existence of a policy are subject to the pleading requirements of *Twombly*/*Iqbal*. As the Ninth Circuit has explained, even in the context of a *Monell* claim, a complaint "may not simply recite the elements of a cause of action, but must contain

8

sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). While the Ninth Circuit previously had a liberal pleading standard for *Monell* claims, "[c]ourts in this circuit now generally dismiss claims that fail to identify the specific content of the municipal entity's alleged policy or custom." *Little v. Gore*, 148 F. Supp. 3d 936, 957 (S.D. Cal. 2015) (citation omitted).

The FAC has a grab bag of allegations concerning the City's policies, alleging that the City (1) knew or reasonably should have known that the officer defendants "had dangerous propensities" for mistreating citizens by failing to follow protocol and for using excessive force; (2) failed to provide adequate training, supervision, and discipline to officers that the city and supervisors should have known had propensities to mistreat citizens; (3) maintained "grossly inadequate procedures" for supervising and disciplining officers; (4) and had an unconstitutional custom and practice of using excessive force and "covering up police misconduct." FAC ¶ 34. It goes on to allege that the City and Chief Kroeger ratified the unconstitutional policies through their action or inaction. *Id*. ¶¶ 36-37.

None of these allegations is supported with facts. The Ninth Circuit in *A.E.* found inadequate a complaint that alleged that the defendants "maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs" alleged elsewhere in the complaint without "put[ting] forth additional facts regarding the specific nature of this alleged 'policy, custom or practice,' other than to state that it related to 'the custody, care and protection of dependent minors.'" 666 F.3d at 637. District courts applying this standard in *Monell* cases have "found vague assertions of municipal policies to be insufficient." *Bagley v. City of Sunnyvale*, No. 16-CV-02250-LHK, 2017 WL 344998, at *15 (N.D. Cal. Jan. 24, 2017). *See, e.g., Inman v. Anderson*, 294 F. Supp. 3d 907, 922 (N.D. Cal. 2018) (dismissing *Monell* claim where the operative complaint was "completely devoid of any facts

9

or details about the actual content of the investigatory policy that purportedly was the 'moving force' behind the alleged constitutional injuries that Plaintiff suffered at the hands of the City Officers"); *Mendy v. City of Fremont*, No. C-13-4180 MMC, 2014 WL 574599, at *3 (N.D. Cal. Feb. 12, 2014) (dismissing *Monell* claim where the allegation in the complaint that the city had an informal custom or policy tolerating the excessive force that the officer was alleged to have used "lacks any specifics and is substantially similar to the conclusory allegation found inadequate in [*A.E.*]").

By contrast, courts have denied motions to dismiss *Monell* claims where the complaints include some factual allegations about the municipal policy at issue to support the claim. In *Boarman v. County of Sacramento*, for instance, the court held that more detailed allegations stated a *Monell* claim:

> In the present case, the First Amended Complaint alleges that "supervising commanders" from the County and City instructed patrol officers to detain and arrest people without probable cause if they looked subjectively suspicious. (FAC ¶¶ 25–26.) These commanders instructed patrol officers to use excessive force, including a Taser, if the person expressed anger or annoyance at being detained. (*Id.* ¶ 27.) A policy of unconstitutional detentions and arrests therefore "arose within the ranks" of patrolling officers in Rancho Cordova, and the brunt of the policy was suffered by African–Americans and other racial minorities. (*Id.* ¶¶ 28–29.) The County Sheriff and City Police Chief received complaints about these activities but did nothing to stop the policy of abuse and did not discipline officers for using excessive force. (*Id.* ¶¶ 29–32.) The County and City also failed to train patrolling officers in correct detention and arrest techniques, even though training was particularly needed in proper use of Tasers. (*Id.* ¶ 33.)

*Boarman v. County of Sacramento*, No. 2:11-CV-02825 KJM, 2013 WL 1326196, at *4 (E.D. Cal. Mar. 29, 2013). Similarly, the court in *Moore v. City of Vallejo* found that a complaint with more detailed allegations also adequately stated a claim:

> The FAC alleges that before the incident underlying this action took place, policymakers at the City, including Chief Kreins, knew of instances in which Officer Kenney and other officers shot individuals who did not pose a threat, including victims who were disabled, knew the shootings were unlawful and outside the accepted law enforcement standards, and yet took no action to correct training programs or policies and procedures that allowed such shootings to take place. FAC ¶ 35. The FAC specifically alleges, that despite this information, the City took no action to adequately investigate, supervise, discipline, or train Officer Kenney or the other officers. *Id*. Furthermore, the FAC alleges that the actions of the officers in this case were carried out pursuant to customs and practices within the Vallejo Police Department, which are listed in detail in the FAC. FAC ¶ 36. The FAC alleges these failures and customs and practices "were a moving force and/or a proximate cause of the deprivations of Plaintiffs'" constitutional rights. FAC ¶ 39.

*Moore v. City of Vallejo*, 73 F. Supp. 3d 1253, 1258 (E.D. Cal. 2014). *See also Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 899 (N.D. Cal. 2013) (denying motion to dismiss *Monell* claim where the allegations "specify the content of the policies, customs, or practices the execution of which gave rise to Plaintiffs' Constitutional injuries.").

Plaintiff's claims here suffer from the same factual deficiency as the cases where courts have found vague assertions of an unconstitutional policy to be insufficient to state a claim. Like those cases, the FAC here begins from the premise that the officer defendants acted unconstitutionally, then asserts various theories of *Monell* liability for why the allegedly unconstitutional acts may have taken place, but without facts to support those theories. Vague and conclusory allegations are inadequate to state a claim for *Monell* liability. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (affirming dismissal where "*Monell* and supervisory liability claims lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*").

As for the ratification theory, Plaintiff's opposition to the motion to dismiss states in support of the allegations in the FAC that the District Attorney's office investigated the incident at issue in this case but that the investigation resulted in no criminal charges or other "remedial and reparative measures." Opp. at 7. These allegations are absent from the FAC and cannot save the otherwise vague and conclusory allegations in the operative complaint. Accordingly, the ratification allegations are inadequate to state a claim for relief.

The motion to dismiss Plaintiff's third claim for relief, for *Monell* liability for an unconstitutional practice or procedure, is **GRANTED WITH LEAVE TO AMEND**. Plaintiff is cautioned not to amend this claim without sufficient factual allegations to fulfill the *Monell* requirements.

**4.** **Sixth Claim For Relief: Failure To Train (42 U.S.C. § 1983)**

Echoing the third claim for relief, the FAC's sixth claim for relief is against the City and Chief

Kroeger for failure to train police employees.[4] While inadequacy of training may constitute a "policy" giving rise to *Monell* liability, "adequately trained [employees] occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *City of Canton v. Harris*, 489 U.S. 378, 379 (1989). Therefore, a claim of inadequate training is only cognizable under § 1983 "where [the County]'s failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.* at 392. In order to show that a failure to train amounts to deliberate indifference, it is "ordinarily necessary" to demonstrate "a pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). In certain cases, however, a showing of "obviousness . . . can substitute for the pattern of violations ordinarily necessary to establish municipal liability." *Connick*, 563 U.S. at 63. This might be so in a situation where "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id*. at 64.

The FAC alleges a number of ways that the City and Chief Kroeger failed to train the police officers in their employ:

> a) Failing to adequately train its officers in the use of force, as well as constitutional limitations in the use of force; b) Failing to adequately train its officers in identifying a person that presents a threat of force or violence, as opposed to one that does not; c) Failing to adequately investigate background, training and experience as a[n] officer and his propensity for violence; d) Failing to provide adequate supervisory control over the actions of its officers in regard to adequate training, supervision, equipment, planning, oversight, and administration; e) Failing to control the conduct of its officers who have a known propensity for violence and in failing to discipline its officers; f) Failing to investigate in good faith, allegations of excessive and unreasonable use of force by its officers; g) Failing to discipline its officers who use excessive and unreasonable force; and; h) Sanctioning, condoning and approving a law enforcement-wide custom and practice of a code of silence, cover-up and dishonesty. i) As a direct and proximate cause of the aforementioned acts of defendants, Plaintiff was injured as set forth above and are entitled to compensatory

---

[4] The extent of overlap is unclear. The third claim for relief discusses failure to train in the context of "[n]ot adequately supervising, training, controlling, assigning, and disciplining CITY Police Officers, and other CITY personnel, including Defendants DOES 1-5, who Defendants CITY and DOE SUPERVISORS each knew or in the exercise of reasonable care should have known *had the aforementioned propensities and character traits* [for abusing their authority and for mistreating citizens]." FAC ¶ 34(b) (emphasis supplied). The focus in the third claim for relief is on the individual defendants' "propensities and character traits," not an across-the-board failure to train, as alleged, at least in part, in the sixth claim for relief.

12

damages according to proof at the time of trial.

FAC ¶ 53. These conclusory allegations fail for the same reason as the allegations in the preceding section. The only one of these allegations that might stand in the absence of any supporting facts indicating a pattern that would alert the city to a problem such that failure to act amounts to deliberate indifference is the claim that the city failed to train the officers in the use of force. Though a Plaintiff is generally required to show a pattern of constitutional violations to make out a *Monell* claim for failure to train, the Supreme Court in *Connick* reaffirmed that in very limited circumstances, municipal liability can arise from a single incident, if that incident arose in egregious circumstances, such as "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Connick*, 563 U.S. at 63 (citing *Canton*, 489 U.S. at 390 n.10). The Court described the *Canton* hypothetical as an extreme one, in which "the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force." *Id.* at 67. *See also Wereb v. Maui County*, 830 F. Supp. 2d 1026, 1033 (D. Haw. 2011) ("Emphasizing its difficulty of proof, *Connick* nevertheless left open (as a general matter) the exceptional possibility that a failure in a municipality's training program could be so obviously deficient that it could lead to liability for damages resulting from a single violation."). Plaintiff here has alleged only that the officers twice shot him in the back when he was unarmed and fleeing, and he argues in opposition to the motion to dismiss that a plausible inference from this is that the officers were inadequately trained. Without more, these facts do not push Plaintiff's claim that the city utterly failed to train its officers in the use of force "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Accordingly, the motion to dismiss the sixth claim for relief is **GRANTED WITH LEAVE TO AMEND**.[5]

---

[5] Defendants have also requested that the Court strike the language in this section stating that "Plaintiff seeks survival damages as successors-in-interest." FAC ¶ 54. The Court assumes that references in the FAC to survival damages were

13

**B.     State-Law Claims**

The FAC alleges that pursuant to California Government Code § 910 *et seq.*, Plaintiff sent the City a tort claim on August 24, 2017, and that the City rejected that claim on October 6, 2017. Defendants assert that Plaintiff never filed the claim and that his state-law claims are therefore barred. In response, Plaintiff attached the claim and letter rejecting the claim as exhibits to his opposition to the motion to dismiss. *See* ECF No. 29-1, 29-2.

In limited circumstances, courts can refer to documents outside the four corners of a complaint without converting the motion to dismiss into a motion for summary judgment. On a motion to dismiss, courts "may consider materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (*citing Intri–Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007)). The first of these, the doctrine of incorporation by reference, has expanded to include situations in which "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Id*. The Court finds that the documents attached to Plaintiff's opposition are incorporated by reference. Because Plaintiff's state-law claims against the City require that he first meet the threshold requirements set forth in the California Tort Claims Act, California Government Code § 810 *et seq.*, the tort claim form is referenced in the FAC, and Defendants have offered no objection about the authenticity or relevance of the claim form, the Court finds that the document is incorporated by reference. It demonstrates that Plaintiff did file the tort claim form, and Defendants' argument that the state-law claims cannot proceed because of the failure to file the form therefore fails.

The state-law claims are considered in turn.

**1.     Fourth And Fifth Claims For Relief: Battery And Negligence**

---

copied in error and will therefore disregard them.

The FAC's fourth claim for relief, for battery, is brought against McCombs, Medina, and Thompson. "The elements of civil battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526–527 (2009) (citation omitted). Under California law, a police officer is authorized to use force to effectuate an arrest. *See* Cal. Penal Code § 835a. The force that an officer is authorized to use must be reasonable, *id.*, and a claim for battery against a police officer thus fails "unless the plaintiff proves the officer used unreasonable force." *Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230, 1248 (2007). *See also Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1129 (9th Cir. 2010) ("Under California law, a plaintiff bringing a battery claim against a law enforcement official has the burden of proving the officer used unreasonable force."); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273 (1998) (in police battery cases, "a prima facie battery is not established unless and until plaintiff proves unreasonable force was used").

The fifth claim for relief, for negligence, is brought against the same officer defendants. "California applies the familiar common law elements of the tort of negligence: a duty to use care, a breach of that duty, and a requirement that the breach was the proximate or legal cause of the resulting injury." *Young Han v. City of Folsom*, 695 F. App'x 197, 198 (9th Cir. 2017). California law provides that public employees "are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions, subject to the same defenses available to private persons." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 628–29 (2013) (citing Cal. Gov. Code § 820). In addition, "public entities are generally liable for injuries caused by the negligence of their employees acting in the scope of their employment." *Id.* at 629 (citing Cal. Gov. Code § 815.2). The California Supreme Court has long held that "that peace officers have a duty to act reasonably when using deadly force" and that the reasonableness of an officer's conduct is judged in light of the totality of the circumstances. *Id.*; *see also id.* at 639 ("Law enforcement personnel's tactical conduct and decisions preceding the use of deadly

force are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability.").

Plaintiff's claims for battery and negligence parallel the § 1983 claim for excessive force, hinging on the reasonableness of the defendants' actions.[6] Plaintiff alleges that the defendants intentionally used unreasonable and legally unjustified force against him, including shooting him, proximately causing his injuries. Because the FAC adequately states a § 1983 claim for excessive force, it also states a claim for battery and negligence.

Accordingly, the motion to dismiss the claims for battery and negligence is **DENIED**.

### 2. Seventh Claim For Relief: Bane Act (Cal. Civ. Code § 52.1)

The Bane Act authorizes individual civil actions for damages and injunctive relief by individuals whose federal or state rights have been interfered with by threats, intimidation, or coercion. *See* Cal. Civ. Code § 52.1(a) (proscribing interference "by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state"); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998) (interpreting Bane Act's use of "interferes" to mean "violates"). The Ninth Circuit has previously held that where a plaintiff brings an excessive force claim rooted in the Fourth Amendment, "the elements of the excessive force claim under § 52.1 are the same as under § 1983." *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013); *see also Chaudhry v. City of L.A.*, 751 F.3d 1096, 1105 (9th Cir. 2014) (same). The Ninth Circuit recognizes, in light of more recent California case law, that "the Bane Act requires 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell v. City & County of San*

---

[6] The California Supreme Court in *Hayes* stated that the state standard for an officer's negligence, which focuses on the totality of the circumstances in determining the reasonableness of an officer's use of force, is broader than the federal standard under the Fourth Amendment, "which tends to focus more narrowly on the moment when deadly force is used." 57 Cal. 4th at 639.

16

*Francisco*, 17 Cal. App. 5th 766, 801 (2017)).  A plaintiff bringing a claim under the Bane Act relating to an excessive force claim must show that the officer "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Id.* at 1045 (internal quotation omitted) (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).  In other words, a plaintiff must show that a defendant had the specific intent to violate the plaintiff's constitutional rights.  This does not require a showing that a defendant knew he was acting unlawfully; "[r]eckless disregard of the 'right at issue' is all that [i]s necessary." *Cornell*, 17 Cal. App. 5th at 804.

The FAC alleges that McCombs, Medina, and Thompson "injured KOLLIN to prevent him from exercising his rights of free speech, free expression, free assembly, due process, and to be free form unreasonable search and seizure, and retaliate against him" for having exercised those rights.  FAC ¶ 58.  Defendants object that this is a conclusory allegation with no facts to support it.  Accepting as true all well-pleaded facts in the FAC and construing the FAC in the light most favorable to Plaintiff, the allegations that defendant officers acted unreasonably and with reckless disregard for his rights under the Fourth Amendment when they shot him twice in the back while he was fleeing, *see* FAC ¶¶ 14-21, adequately alleges a violation of the Bane Act.

Accordingly, the motion to dismiss the seventh claim for relief is **DENIED**.

**3.     Eighth Claim For Relief: False Arrest And False Imprisonment**

Under California law, false arrest and false imprisonment are not separate torts.  Rather, "false arrest is but one way of committing a false imprisonment." *Collins v. San Francisco*, 50 Cal. App. 3d 671, 673 (1975).  "False imprisonment is 'the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.'" *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992) (quoting *Molko v. Holy Spirit Ass'n for Unification of World Christianity*, 46 Cal. 3d 1092, 1123 (1988)).  Under California Penal Code § 847(b), "an officer cannot be held civilly liable for false imprisonment where the officer, 'acting within the scope of his or her authority,' made a 'lawful' arrest or 'had reasonable cause to believe the arrest was lawful.'"

*Blankenhorn v. City of Orange*, 485 F.3d 463, 486 (9th Cir. 2007) (quoting Cal. Pen. Code § 847(b)). "Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt." *Levin v. United Air Lines, Inc.*, 158 Cal. App. 4th 1002, 1018 (2008), *as modified* (Jan. 14, 2008). The standard is an objective one, i*d.*, and "tracks the fate of its federal counterpart." *May v. San Mateo County*, No. 16-CV-00252-LB, 2017 WL 1374518, at *14 (N.D. Cal. Apr. 15, 2017).

Because the Court found that Plaintiff failed to state a false-arrest claim under § 1983, it also finds that Plaintiff has failed to state a cause of action under its state counterpart. Accordingly, the motion to dismiss Plaintiff's claim for false arrest is **GRANTED WITH LEAVE TO AMEND**.

## V. CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss the first claim for relief, for a violation of § 1983 based on excessive force, is **DENIED**;

2. Defendants' motion to dismiss the second claim for relief, for violation of § 1983 based on wrongful detention and arrest, is **GRANTED WITH LEAVE TO AMEND**;

3. Defendants' motion to dismiss the third claim for relief, for *Monell* liability for an unconstitutional practice or procedure, is **GRANTED WITH LEAVE TO AMEND**;

4. Defendants' motion to dismiss the fourth claim for relief, for battery, is **DENIED**;

5. Defendants' motion to dismiss the fifth claim for relief, for negligence, is **DENIED**;

6. Defendants' motion to dismiss the sixth claim for relief, for *Monell* liability for failure to train, is **GRANTED WITH LEAVE TO AMEND**;

7. Defendants' motion to dismiss the seventh claim for relief, for a violation of the Bane Act, is **DENIED**;

8. Defendants' motion to dismiss the eighth claim for relief, for false arrest/false imprisonment, is **GRANTED WITH LEAVE TO AMEND**;

9. Plaintiff shall file any amended complaint within thirty (30) days of electronic service of this Memorandum Decision and Order.

This Court is beyond busy and has put significant time into this analysis and order. Counsel is cautioned that if he chooses to amend, it should only be done if the facts support the law. Further, the amended complaint, if filed, should be viewed as the last opportunity to plead proper claims.

IT IS SO ORDERED.

Dated: **August 24, 2018**     **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE